**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| LAURA SONIA ARTEAGA-DE ALVAREZ, | No. 08-70941 |
| *Petitioner*, | |
| | Agency No. A200-050-940 |
| v. | |
| ERIC H. HOLDER, JR., Attorney General, | OPINION |
| *Respondent*. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted August 9, 2012*
Pasadena, California

Filed December 26, 2012

Before: Stephen Reinhardt, Barry G. Silverman,
and Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge Reinhardt;
Partial Concurrence and Partial Dissent
by Judge Silverman

---

* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

## SUMMARY[**]

### Immigration

The panel dismissed in part for lack of jurisdiction and vacated in part Laura Arteaga de Alvarez's petition for review from the Board of Immigration Appeals' decision denying her application for cancellation of removal.

The panel dismissed for lack of jurisdiction Arteaga's claim that the denial of cancellation deprived her of due process where a different Immigration Judge had four years earlier granted relief to her husband on similar facts. The panel vacated and remanded, however, on Arteaga's claim that the BIA erred in relying on a categorical rule that the availability of alternative lawful means to immigrate necessarily undercuts an alien's claim of hardship to a qualifying relative.

Judge Silverman, concurring in part and dissenting in part, would dismiss the petition in full for lack of jurisdiction. Judge Silverman agreed that this court lacks jurisdiction over Arteaga's due process claim. He disagreed, however, with the majority's conclusion that the BIA erred in finding that Arteaga had an alternative means to adjust her status, and he would find that this court lacks jurisdiction to second-guess the IJ and BIA's determination.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Joseph Mbacho, El Centro, California, for Petitioner.

Tony West, Assistant Attorney General, Civil Division; David M. McConnell, Deputy Director; Stacy S. Paddack, Senior Litigation Counsel; and Elizabeth A. McAdams, Law Clerk, Office of Immigration Litigation, Civil Division, Department of Justice; Washington, D.C., for Respondent.

**OPINION**

REINHARDT, Circuit Judge:

**I.**

Petitioner Laura Arteaga de Alvarez ("Arteaga") is an undocumented Mexican national. She is married to a legal permanent resident, who obtained that status after being granted cancellation of removal in 2003, shortly before the couple married. They have three children who are all United States citizens. In 2005, after voluntarily turning herself in to immigration authorities, Arteaga applied for cancellation of removal. Her application was denied in 2007 by an immigration judge who determined that she had not demonstrated the requisite exceptional and extremely unusual hardship to a qualifying relative. The BIA affirmed, and included in its reasoning a statement that the fact that Arteaga had alternative means to immigrate, i.e. a spousal petition filed by her husband, necessarily undercut her ability to demonstrate that her children would suffer exceptional and extremely unusual hardship if she were to be removed from the United States. We hold that we do not have jurisdiction

over Arteaga's claim that her due process rights were violated by the fact that her husband was granted cancellation of removal four years earlier based on similar facts. We vacate and remand, however, on Arteaga's second claim that the BIA erred as a matter of law when it held that an applicant for cancellation of removal's ability to demonstrate hardship to his qualifying relatives is necessarily undercut by the possibility that the applicant may have alternative means to immigrate at some undefined point in the future.

## II. FACTS

Arteaga is a native and citizen of Mexico who arrived in the United States almost twenty years ago, on March 22, 1993, without being admitted or paroled. She does not contest that she entered the country illegally. Arteaga lived in Salinas, California when she first came to the United States and after ten years she moved to Yuma, Arizona, where she currently resides. Her mother and ten of her siblings live in Mexico, and two of her sisters live in California.

On December 6, 2003, Arteaga married Jesus Alvarez ("Alvarez"). He is a lawful permanent resident, having been granted cancellation of removal on April 23, 2003, by an Immigration Judge ("IJ") in San Francisco. On October 28, 2005, Alvarez filed a petition to immigrate Arteaga on the basis of their marriage.

Arteaga and Alvarez have three children together, ages 18, 15 and 10, all born prior to their marriage. All three children were born in the United States and are American citizens. When asked what language the children speak, Arteaga answered, "English and little Spanish, but the, my daughter, the, English." The middle child, Natalie, who was

9 years old at the time of Arteaga's hearing, was receiving speech therapy. Natalie was unable to speak until age 4, and Arteaga testified that Natalie had seen doctors in the past but that she did not "have to as much anymore because the school is helping her now." Natalie receives speech therapy once a week in a special class in the same school where she receives regular instruction, and the speech language pathologist at the school recommended that "direct therapy continue for the next school year." An Individualized Education Plan was submitted in evidence, which states that Natalie is "still delayed in her verbal communication." A teacher "reports that Natalie is very difficult to understand in the classroom." Arteaga also reports that Natalie has difficulty pronouncing Spanish words. None of Arteaga's other children has any medical problems.

Arteaga testified that she would take her children with her if she were deported to Mexico. However, on her original application for cancellation of removal, Arteaga indicated that her children would remain in the United States with her husband. When asked how deportation would affect her children, she answered that "they have their lives made here already."

## III. PROCEEDINGS BELOW

Fearing that she would be apprehended on the street, Arteaga self-surrendered at a border patrol station on November 2, 2005. She was served with a Notice to Appear the same day. Arteaga was charged with being removable under § 212(a)(6)(A)(i) of the Immigration and Nationality Act because she is an alien present in the United States without being admitted or paroled. On December 19, 2005, Arteaga filed an application for cancellation of removal.

Arteaga appeared with counsel before an IJ on January 13, 2006. She conceded removability but continued to pursue her application for cancellation of removal and, in the alternative, for voluntary departure. The hearing was continued to September 18, 2006, at which time Arteaga offered testimony in support of her application. At the conclusion of her testimony, the IJ asked a clerk to do a records check on the 2003 grant of permanent residency to Alvarez. After a break in the proceedings, the IJ stated:

> [W]e discovered that he was granted cancellation of removal by another Immigration Court on the day set forth on his lawful permanent residency card, April 23, 2003. So, I wanted both counsel to be aware of that. It seemed to me that that's an important factor for me to take into consideration in the case, and for both of them to be aware of. I have discussed that fact with both counsel, and to summarize, in this case this evidence simply does not rise to the level of exceptional and extremely unusual hardship. Court's unaware [sic] of what factors the husband's cancellation was granted on, but if it was similar to the evidence presented in this case, we are a little concerned about the consistency between the decisions.

The IJ then granted a continuance, with consent from the government, to allow Arteaga to file a request for prosecutorial discretion. On October 6, 2006, the case was administratively closed while the Department of Homeland

Security adjudicated the application for prosecutorial discretion.

On April 6, 2007, the IJ announced that the application for prosecutorial discretion had been denied, and he received a motion from the government to recalender the case. Arteaga indicated that she would like to continue to pursue relief rather than accept voluntary departure at an early stage, if offered by the government.

On April 9, 2007, the IJ rendered his oral decision based on the testimony presented during the September 2006 hearing. He determined that Arteaga had testified credibly, and that she met the first three prongs needed to establish eligibility for cancellation of removal: physical presence, good moral character, and lack of criminal convictions. However, the IJ determined that Arteaga did not meet the fourth prong: exceptional and extremely unusual hardship to a qualifying relative. The IJ held that her U.S. citizen children and permanent resident husband, the qualifying relatives in this case, were "all in good health." He noted that one child "was identified as having a problem speaking," but that the issue "has been dealt with through special classes and therapy." The IJ further explained that Alvarez had "filed an application to immigrate" Arteaga, which was pending, and that "it will be some period of time before a visa becomes available."[1] He concluded that although Arteaga's being deported would cause a hardship to her children, it did not

---

[1] Contrary to the dissent's suggestion, however, the IJ did not make a finding regarding the *viability* of Arteaga's alternative means to immigrate. Specifically, he did not find that her visa petition was likely to be granted or that action would be taken within a reasonable period of time, or within any particular period of time whatsoever.

"rise[] to the level of exceptional and extremely unusual hardship." Accordingly, he granted voluntary departure instead.

Arteaga filed a timely appeal with the BIA. She stated that the IJ had failed to give weight to her daughter's medical condition, and that the denial of relief was "inconsistent with a decision to grant issued by an Immigration Judge in San Francisco for [her] husband for the same evidence and application." The BIA dismissed the appeal. In a per curiam decision, it affirmed that "[f]or the reasons identified by the [IJ] . . . the level of hardship in this case falls short of the exceptional and extremely unusual standard." The BIA noted that Arteaga had not demonstrated that speech therapy would be unavailable in Mexico. Furthermore, it explained that the IJ "was not bound by the decision of a different IJ in a separate matter," and thus Arteaga's husband's successful application for cancellation of removal was not grounds for reversal. Finally, the BIA stated: "Moreover, the respondent's husband is now a lawful permanent resident who has filed a visa petition on her behalf. We have long held that the availability of an alternative means of lawfully immigrating to the United States undercuts a claim of exceptional and extremely unusual hardship stemming from an alien's removal."

## IV. JURISDICTION AND STANDARD OF REVIEW

In cancellation of removal cases we lack jurisdiction to "review[] the merits of a hardship determination." *Mendez-Castro v. Mukasey*, 552 F.3d 975, 978 (9th Cir. 2009). However, we have jurisdiction under 8 U.S.C. § 1252(a)(2)(D) to review constitutional claims and questions of law raised upon a petition for review. *Cabrera-Alvarez v.*

*Gonzalez*, 423 F.3d 1006, 1009 (9th Cir. 2005). This includes any alleged "colorable constitutional violation," *Martinez-Rosas v. Gonzales*, 424 F.3d 926, 930 (9th Cir. 2005), as well as questions of statutory interpretation, which are reviewed de novo, giving appropriate deference to the agency if warranted. *Cabrera-Alvarez*, 423 F.3d at 1009; *see also Uppal v. Holder*, 605 F.3d 712, 714 (9th Cir. 2010). Where, as here, the BIA adopts the opinion of the IJ while adding its own reasoning, we review both decisions, treating any additional findings by the BIA as part of the final agency action. *Nuru v. Gonzales*, 404 F.3d 1207, 1215 (9th Cir. 2005).

## V. ANALYSIS

The requirements for cancellation of removal and adjustment of status for certain nonpermanent residents are set forth in 8 U.S.C. § 1229b(b)(1). The only requirement at issue here is whether the BIA erred in holding that Arteaga did not establish that her removal would result in exceptional and extremely unusual hardship to a qualifying relative, defined as a "spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1229b(b)(1).

Arteaga argues that the BIA's analysis was doubly flawed. First, she asserts, it violated her right to due process by denying her application for cancellation of removal when her husband's application had been granted by a different IJ in 2003. Second, she contends that the BIA impermissibly treated her ability to return to the United States lawfully at some indeterminate point in the future as necessarily undercutting her claim that her children would suffer the

requisite hardship if she were to be removed from the United States.  We examine each argument below.

## A.

We cannot, of course, consider Arteaga's claim that the BIA's decision violated her due process rights, unless we have jurisdiction over that claim.  We have jurisdiction over a constitutional challenge to a BIA decision denying cancellation of removal only if the constitutional claim is "colorable", i.e., if it has "some possible validity." *Martinez-Rosas*, 424 F.3d at 930 (internal quotation marks omitted).

Arteaga does not present a colorable due process claim. Her due process claim is that the BIA's and IJ's failure to follow the decision of another IJ, who granted her husband cancellation of removal on the basis of "similar facts" four years earlier, amounted to a violation of her due process rights. We have already held, however, that we lack jurisdiction over a due process claim that alleges that the BIA's hardship determination in a cancellation of removal case is factually inconsistent with similar prior agency hardship determinations. *Mendez-Castro*, 552 F.3d at 980. In *Mendez-Castro* we first stated that the exceptional and extremely unusual hardship standard involves a subjective determination "that depends on the identity and the value judgment of the person or entity examining the issue." *Id.* (internal quotation marks and citation omitted). We then reasoned that a challenge to a hardship determination based on prior agency hardship determinations, therefore, impermissibly "require[s] us [to] step into the IJ's shoes and reweigh the facts in light of the agency's subjective treatment of purportedly similar cases." *Id.*  Accordingly, a challenge to the agency's hardship determination in which the applicant

argues that his case is analogous to a prior case, is "not even colorable, but merely an attempt to cloak an abuse of discretion argument in the garb of a question of law." *Id.* (internal quotation marks and brackets omitted).

Arteaga's due process claims are indistinguishable from Mendez-Castro's. She argues that the denial of her application for cancellation of removal is contrary to a prior agency hardship determination, in this case the grant of cancellation of removal to her husband four years earlier on the basis of similar, but not identical facts.[2] Because we are bound by *Mendez-Castro*, which Arteaga does not attempt to

---

[2] Arteaga fails to explain the basis on which her husband's application for cancellation of removal was granted; she merely asserts that his application, which is not in the record, was based on "similar" facts. Elsewhere in her briefing before this court, Arteaga claims that Alvarez's application contained the "same set of evidence," but this assertion is belied by the record. In April of 2003, when Alvarez was granted cancellation of removal, Alvarez and Arteaga were not yet married. Their middle daughter, who suffers from a speech impediment that has improved over the years, and who did not begin to speak until she was 4, would have been 5 at the time and therefore only just beginning to speak. Furthermore, much of the evidence in the administrative record is dated after April 2003, when Alvarez's application was granted. Accordingly, his application for cancellation of removal necessarily was not identical to Arteaga's. We therefore have no reason to reach a more difficult constitutional question, which was not addressed in *Mendez-Castro*, of whether a petitioner could raise a colorable constitutional claim under the equal protection clause if she were denied cancellation of removal when her spouse was granted relief on a truly identical claim. *Cf. Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ("[T]he equal protection clause of the Fourteenth Amendment . . . secure[s] . . . against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." (internal quotation marks and citation omitted)).

distinguish,[3] we lack jurisdiction to review her due process claim. We therefore dismiss this claim.

## B.

We now turn to Arteaga's claim that the BIA erred in interpreting the statute setting forth the requirements for cancellation of removal by holding that a petitioner's alternative means to immigrate to the United States necessarily undercuts a claim of exceptional and extremely unusual hardship.

## 1.

We must first determine whether we have jurisdiction to hear this claim. We have jurisdiction to review the BIA's holdings regarding questions of law in cancellation of removal cases, including issues involving statutory interpretation. *Figueroa v. Mukasey*, 543 F.3d 487, 495 (9th Cir. 2008). In *Figueroa* we exercised our jurisdiction to review a claim that the BIA acted contrary to law by requiring the petitioners to show "unconscionable" hardship and by analyzing only current hardship, as opposed to future hardship, to qualifying relatives. *Id.* at 496–98. We explained: "Petitioners do not argue that the IJ made a legal error by misapplying the facts of their case to the applicable law; rather, they argue that the IJ made legal errors in determining the meaning of 'exceptional and extremely unusual hardship.'" *Id.* at 495. Therefore, "[b]ecause Petitioners argue

---

[3] We note that the opening brief in this case was filed prior to the decision in *Mendez-Castro*. However, Arteaga had the opportunity to address the case, either in her reply brief, which was filed after *Mendez-Castro* was decided, or in a letter to the panel.

that the IJ failed to follow BIA precedent and misconstrued the statute when determining whether Petitioners had demonstrated 'exceptional and extremely unusual hardship' under 8 U.S.C. § 1229b(b)(1)(D), we hold that we have jurisdiction to review their challenge." *Id.* at 496; *accord Pareja v. Attorney General of the United States*, 615 F.3d 180, 188 (3d Cir. 2010).

The same is true here. Arteaga argues that the BIA erred as a matter of law by holding that the existence of alternative means to immigrate to the United States — potential or actual, determinate or indeterminate in time — necessarily undercuts an applicant's claim that his removal will result in exceptional and extremely unusual hardship to his qualifying relatives. Because this raises a colorable question of law, we have jurisdiction to review whether the BIA "made a hardship determination based on 'an erroneous legal standard' or 'on fact-finding which is flawed by an error of law.'" *Pareja*, 615 F.3d at 188 (quoting *Mendez v. Holder*, 566 F.3d 316, 322 (2d Cir. 2009) (per curiam)); *see also Figueroa*, 543 F.3d at 496.

The government argues that we lack jurisdiction over this issue because, in its view, the BIA did not in fact base its denial of Arteaga's application for cancellation of removal on the ground that she had alternative means to immigrate.[4]  A

---

[4] We note that this is the *only* argument the government makes about the alternative means to immigrate issue.  The government failed to otherwise address jurisdiction, standard of review, or the merits.  The government has a responsibility to defend the merits of a BIA decision when arguing that an immigrant should be deported, or else to suggest a remand if the BIA's merits determination is unworthy of defense.  We are not the first

careful reading of the BIA's opinion, however, shows that it did rely, at least in part, on Arteaga's alternative means to immigrate to the United States as a basis for denying her application for cancellation of removal. The BIA supported its holding that Arteaga had not established that her children would suffer the requisite hardship as a result of her removal on several grounds. First, it incorporated "the reasons identified by the Immigration Judge." The IJ, in turn, had explained why Arteaga did not meet the hardship requirement in part by stating that "[h]er husband has filed a petition to immigrate her. That is pending, and it will be some period of time before a visa becomes available." The IJ also stated at a previous hearing that Alvarez's lawful status was an "important factor for me to take into consideration in the case." Second, the BIA reiterated the IJ's finding that Arteaga had not demonstrated that her daughter would be unable to receive speech therapy in Mexico. Third, the BIA noted that the IJ was not bound by the grant of cancellation of removal to Alvarez. And fourth, the BIA explained that Arteaga's

---

court to admonish the government for failing to address the merits of an alien's appeal. The Third Circuit recently wrote:

> The government has every right – a duty, even – to tell us when it believes we lack jurisdiction over a particular case. But when the government seeks to remove an individual from this country – a result the Supreme Court has recognized as "a drastic measure and at times the equivalent of banishment or exile," – it seems to us that the government has an especial obligation to explain, in the event its jurisdictional challenge fails, why the petitioner is wrong on the merits.

*Pareja*, 615 F.3d at 186 n.3 (quoting *Fong Haw Tan v. Phelan*, 333 U.S. 6, 10 (1948)).

husband was "now a lawful permanent resident who has filed a visa petition on her behalf," and that it had "long held that the availability of an alternative means of lawfully immigrating to the United States undercuts a claim of exceptional and extremely unusual hardship." In short, the BIA stated that regardless of the merits of the claim, it is undercut as a matter of law by the availability of alternative means of immigrating.

Nowhere did the BIA suggest that the last part of its holding relating to the availability of alternative means of immigrating was meant as a holding in the alternative. Rather, it is clear that the BIA determined that Arteaga did not meet the exceptional and extremely unusual hardship standard for a combination of the factors it cited, *including* the availability of an alternative means of immigrating. It is certainly true that the BIA also relied on other factors. We cannot know, however, what the BIA might have held absent its reliance in part upon the alternative means to immigrate factor. Because we are barred from reweighing the hardship factors in cancellation of removal cases, *Mendez-Castro*, 552 F.3d at 980, we cannot speculate how the BIA might have decided this case had it not relied in part on each of the factors it listed as supporting its decision. Accordingly, we have jurisdiction to determine whether the BIA committed an error of law in applying a categorical rule that the existence of alternative means to immigrate is necessarily a negative factor in all cases in which such alternative means may be available to the applicant.

**2.**

Having determined that we have jurisdiction over Arteaga's second claim, we must next determine what deference, if any, we owe the BIA's decision. Questions of statutory interpretation are reviewed de novo, but we give deference to the agency if warranted. *Cabrera-Alvarez*, 423 F.3d at 1009. "Because the BIA does have expertise in [interpreting the Immigration and Nationality Act], we defer to its conclusion if warranted, following the *Chevron* framework if the decision is a published decision (or an unpublished decision directly controlled by a published decision . . .), and following the *Skidmore* framework if the decision is unpublished (and not directly controlled by any published decision interpreting the same statute)." *Uppal*, 605 F.3d at 714; *see generally Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837 (1984); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). The weight given under *Skidmore* "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore*, 323 U.S. at 140.

In this case, the BIA opinion is not a published decision. Although the BIA cites to three published decisions, *Matter of Monreal*, 23 I. & N. Dec. 56 (BIA 2001), *Matter of Andazola*, 23 I. & N. Dec. 319 (BIA 2002), and *Matter of Recinas*, 23 I. & N. Dec. 467 (BIA 2002), none directly controls this question, i.e., whether the availability of alternative means of immigrating is a factor that necessarily undercuts an alien's cancellation of removal claim of exceptional and extremely unusual hardship to a qualifying relative.

In *Monreal*, the BIA simply held that the factors it had previously used to assess hardship claims for suspension of deportation relief should also be considered with regard to a cancellation of removal hardship claim to the extent these factors pertained to the hardship that would be suffered by an applicant's qualifying relatives.[5] 23 I. & N. Dec. at 63. However, in suspension of deportation cases the availability of alternative means of immigrating did not *necessarily* undercut an applicant's claim that he or his qualifying relatives would suffer extreme hardship; the BIA was allowed to consider this factor only when the applicant had "a realistic chance for adjustment through other means in the near future." *Gutierrez-Centeno v. INS*, 99 F.3d 1529, 1532 n.6 (9th Cir. 1996). Therefore, by incorporating some of the suspension of deportation hardship factors into the cancellation of removal hardship enquiry, *Monreal* did not establish the categorical rule the BIA relied upon here.

---

[5] Suspension of deportation was the more generous predecessor of cancellation of removal. *See* 8 U.S.C. § 1254(a)(2) (repealed 1996). Under suspension of deportation, the BIA considered whether *either* the applicant or his qualifying relatives would suffer "extreme" hardship as a result of the applicant's removal. *Id.*

The suspension of deportation hardship factors were originally enumerated in *Matter of Anderson*, 16 I. & N. Dec. 596, 597 (BIA 1978). In addition to the alternative means to immigrate factor, the *Anderson* factors are: "age of the subject; family ties in the United States and abroad; length of residence in the United States; condition of health; conditions in the country to which the alien is returnable—economic and political; financial status—business and occupation;. . .; whether of special assistance to the United States or community; immigration history; [and] position in the community." *Id.*

The other two cases cited by the BIA provide even less support for the categorical rule. The alternative means to immigrate factor is not mentioned at all in *Andazola*, 23 I. & N. Dec. 319, and in *Recinas* the fact that the cancellation of removal applicant had alternative means of immigrating in the long term, but which were not available in the immediate future, was actually considered a factor *in favor of* granting cancellation of removal, not a factor necessarily undercutting a claim of hardship. *See* 23 I. & N. Dec. at 470; *see also Gutierrez-Centeno*, 99 F.3d at 1532 n.6 (requiring the BIA to "realistically assess the efficacy of the alternative means of adjustment of status before considering whether this factor weighs against *or in favor of* extreme hardship, and how much weight to give it" (emphasis added)).

Thus, *Chevron* deference is unwarranted because none of the published decisions cited by the BIA controls this case. Moreover, applying the *Skidmore* framework, the BIA decision is not entitled to substantial weight. Its discussion of the alternative means to immigrate factor consists of one conclusory sentence. It is not throughly reasoned, and, as it lacks any explanation, it also lacks the "power to persuade." *Skidmore*, 323 U.S. at 140.

### 3.

Having finally reached the merits, we conclude that the BIA committed legal error by considering Arteaga's alternative means of immigrating to the United States as a factor that *necessarily* undercuts her claim of exceptional and extremely unusual hardship. Such a categorical rule is contrary to the requirement that the BIA conduct an individualized enquiry in each case and that each cancellation of removal application "be assessed and decided on its own

facts." *Monreal*, 23 I. & N. Dec. at 63. *Monreal* points out that the nature of the qualifying relative's exceptional and extremely unusual hardship is usually that such hardship is serious and pressing. *See id.* Exceptional and extremely unusual hardship arises, for example, when the applicant "has elderly parents in this country who are solely depending upon him for support" or his "qualifying child [has] very serious health issues, or compelling special needs in school." *Id.* It is simply not the case in all such instances that an alien's alternative means of immigrating to the United States will alleviate the qualifying relatives' hardship. It is no solace, for example, to a dying parent or a sick or educationally needy child who is left behind in the United States that his caretaker might someday return to the this country. Therefore, the BIA's reliance on a rule that "the availability of alternative means of lawfully immigrating to the United States undercuts a claim of exceptional and extremely unusual hardship," in all cases, constitutes an error of law.

We made a similar point under the previous suspension of deportation standard, which permitted consideration of the hardship that would be suffered by the applicant himself. We stated:

> [U]nless there is a realistic chance for adjustment through other means in the near future, this [alternative means to immigrate] factor should not weigh against an alien. . . . That an alien may be able to adjust his status a number of years from the time of his deportation does not significantly diminish the hardship he would suffer if deported.

*Gutierrez-Centeno*, 99 F.3d at 1532 n.6.[6]  This is even more true with respect to hardship suffered by qualifying relatives. Whereas the applicant himself might experience at least *some* reduction in hardship if he is able to return within a reasonable period after his removal, the sick parent or child who dies in the meantime, or the child who permanently loses the opportunity to receive special education or therapy during the critical years that it is needed, will not experience a reduction in that hardship as the result of the applicant's eventual return.  The BIA recognized as much when it applied *Monreal* in *Recinas*, and determined that in light of the "significant backlog of visa availability to Mexican nationals with preference classification," Recinas' ability to immigrate at some indeterminate point in the future would do nothing to alleviate the hardship her children would endure as a result of her immediate removal. 23 I. & N. Dec. at 467.

The rule that alternative means of immigrating necessarily undercuts a claim of hardship is also inconsistent with the

---

[6] The dissent wrongly suggests that we are relying on *Gutierrez-Centeno* for the proposition that we have jurisdiction to review the discretionary weight that the BIA assigned to the IJ's factual determination that Arteaga's "husband has filed a petition to immigrate her . . . and it will be some period of time before a visa becomes available."  We do no such thing. Our point is that the BIA relied at least in part upon an improper rule of law, rather than balancing the *Monreal* hardship factors presented by this particular case. Accordingly, we merely rely on *Gutierrez-Centeno*'s statement, which was not affected by IIRIRA's jurisdiction-stripping provisions, that an applicant's hardship claim is not *necessarily* undercut, as a matter of law, by the fact that the applicant may be able to return to this country by other means at some point in the indeterminate future. Each case must be considered on its own facts, and had the BIA done so here without relying on a categorical rule of law, we agree that we would not have jurisdiction to review the BIA's balancing of the hardship factors.

statute's purpose: to provide discretionary relief to certain undocumented aliens in order to protect citizens and permanent residents from suffering exceptional or extremely unusual hardship as the result of the removal of a relative upon whom they are dependent for essential financial, emotional, physical, or other support. The only aliens eligible to apply for such relief are those with a spouse, parent, or child who is a citizen or lawful permanent resident. 8 U.S.C. § 1229b(b)(1). Yet such aliens will be potential beneficiaries, at some point, of a family-based petition filed by the qualifying relative in almost every case. *See* 8 U.S.C. §§ 1151(b)(2)(A)(i), 1153(a), 1255(a); 8 C.F.R. §§ 204.1–2. Thus, a rule that alternative means of immigrating to the United States necessarily undercuts a claim of hardship would operate as a negative factor in almost every single cancellation of removal case. Such a result would be contrary to both the purpose and spirit of the hardship provision.

We do not mean to suggest that alternative means of immigrating to the United States can *never* be a negative factor in a hardship determination. For example, in an unpublished decision, the BIA appropriately upheld the denial of cancellation of removal in part based on this factor, where it found that any separation was "unlikely to be prolonged." *Matter of Al-Lahalih*, 2005 WL 3016073, at *1 (BIA 2005). The BIA in that case considered how alternative means of immigrating affected the qualifying relative in that particular case in light of the short length of separation. *Id.* Here, however, as we have already explained, the BIA committed an error of law by relying on a categorical rule that the alternative means of immigration factor *necessarily* undercuts an applicant's claimed hardship in every case.

In sum, a categorical rule that alternative means to immigrate necessarily undercuts a claim of hardship is inconsistent with the requirement that the agency examine each applicant's case on its individual facts. In most cases, where the applicant does not have a readily available alternative means of immigrating in the near future, the distant possibility of doing so will do little to alleviate any exceptional and extremely unusual hardship that the removal would cause to a qualifying relative. Moreover, the categorical rule applied by the BIA here is contrary to our precedent, prior BIA decisions, and the underlying purpose of cancellation of removal relief. We therefore hold that the categorical rule constitutes an erroneous interpretation of the statute, and remand to the BIA for reconsideration under the appropriate legal standard.

## VI. CONCLUSION

For the foregoing reasons, we dismiss for lack of jurisdiction Arteaga's claim that she was deprived of due process because she was denied cancellation of removal even though her husband, on similar facts, was granted relief four years earlier. We do, however, have jurisdiction over her second claim that the BIA committed an error of law in relying on a categorical rule that the availability of alternative relief necessarily undercuts a cancellation of removal claim of hardship to the applicant's qualifying relative. On that claim, we hold that the BIA erred as a matter of law in applying a categorical rule. On remand, the BIA may rely on the alternative means to immigrate factor only to the extent justified by the particular facts of this case.

**VACATED and REMANDED.**

SILVERMAN, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that we lack jurisdiction over Petitioner's due process claim and that we must dismiss that aspect of the petition for review. However, I respectfully disagree with the majority's conclusion that the BIA, as a matter of law, erred in finding Petitioner had an alternative means to adjust her status, one of many factors relevant to the "exceptional and extremely unusual hardship" requirement for cancellation of removal. I would dismiss the petition for review in its entirety.

The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 stripped this court of its jurisdiction to review these discretionary hardship determinations. In *Romero-Torres v. Ashcroft*, 327 F.3d 887 (9th Cir. 2003), we held that the hardship requirement posed a "subjective question" and that "[b]ecause the BIA . . . is vested with the discretion to determine whether an alien has demonstrated the requisite hardship, we are without jurisdiction to review the BIA's hardship determinations under IIRIRA." *Id*. at 890–91. We reaffirmed this holding after the REAL ID Act of 2005 was passed. *Martinez-Rosas v. Gonzales*, 424 F.3d 926, 929–30 (9th Cir. 2005). The majority relies on *Gutierrez-Centeno v. I.N.S.*, 99 F.3d 1529, 1532 & n.6 (9th Cir. 1996), to argue that the BIA did not adequately assess the individual facts of this case in concluding an alternative means to adjust Petitioner's status was available. But that case was significantly undercut, if not abrogated, by IIRIRA, and we have previously recognized as much in *Falcon Carriche v. Ashcroft*, 350 F.3d 845, 854 n.9 (9th Cir. 2003) ("The [petitioners] rely upon cases suggesting that the BIA must explain how it balanced the particular facts

of each case in reaching its hardship determination. But these cases, which were decided before IIRIRA removed our jurisdiction to review discretionary determinations of the BIA, are not persuasive here." (citations omitted)).

The majority takes issue with the IJ and BIA's application of one of a host of factors that may be considered for cancellation of removal hardship findings: "the *possibility* of other means of adjusting status in the United States." *Matter of Monreal-Aguinaga*, 23 I. & N. Dec. 56, 63 (BIA 2001) (emphasis added). The IJ noted that Petitioner's husband had "filed a petition to immigrate her" and that it would be "some period of time before a visa [became] available." And though the IJ acknowledged that removing Petitioner would impose a hardship on her and her family, he nevertheless concluded that the evidence simply did not rise to the level of an "exceptional and extremely unusual hardship." The BIA expressly adopted this finding and the reasoning supporting it. In closing, the BIA merely reiterated what the IJ had noted–that her husband had filed a visa petition and that "the *availability* of an alternative means of lawfully immigrating to the United States undercuts a claim of exceptional and extremely unusual hardship stemming from an alien's removal." (Emphasis added).

The majority characterizes the BIA's statement as a "categorical rule" that alternative means to immigrate "necessarily" preclude a finding of exceptional and extremely unusual hardship. Aside from the fact that the BIA did not rely solely on the alternative means factor, the BIA adopted the IJ's reasoned finding that immigrating by other means was "available" in this case. By contrast, in *Gutierrez-Centeno*, the BIA relied on petitioner's representation that "she has a brother who is a lawful permanent resident,

indicating the potential, at least, for eventually other means of adjusting her status." 99 F.3d at 1532 (quotation marks omitted). Here, both the IJ and the BIA concluded that Petitioner had more than a merely theoretical possibility of adjusting her status, and we may not revisit that finding. Had Petitioner demonstrated that alternative relief was legally unavailable or effectively unavailable due to a backlog of applications or other severe delay, *see Matter of Recinas*, 23 I. & N. Dec. 467, 472 (BIA 2002), her claim might have prevailed before the IJ. The IJ clearly acknowledged that a visa would not issue instantaneously and that this would be a hardship for her children, but he ultimately found those facts did not meet the high statutory threshold. We may not mandate the consideration of certain facts or factors as part of this discretionary determination. *See Mendez-Castro v. Mukasey*, 552 F.3d 975, 980 (9th Cir. 2009) ("[T]he IJ expressly cited and applied *Monreal* in rendering its decision, which is all our review requires.").

Since we lack jurisdiction to second-guess the IJ and BIA's determination that Petitioner has an alternative means to adjust her status, I would dismiss the petition for review in full for lack of jurisdiction.