**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ELFIDO MENDEZ-CASTRO; ROSA
IMELDA MENDEZ,
                    *Petitioners,*

            v.

MICHAEL B. MUKASEY, Attorney
General,
                    *Respondent.*

No. 06-70362

Agency Nos.
A92-693-802
A77-110-809

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
February 6, 2008—Pasadena, California

Filed January 12, 2009

Before: Alex Kozinski, Chief Judge,
Diarmuid F. O'Scannlain, and William A. Fletcher,
Circuit Judges.

Opinion by Judge O'Scannlain

**COUNSEL**

Henry Weissman, Munger, Tolles & Olson LLP, Los Angeles, California, argued the cause for the petitioners and filed briefs.

William C. Minick, Attorney, Office of Immigration Litigation, U.S. Department of Justice, Washington, DC, argued the cause for the respondent and filed a brief; Peter D. Keisler, Assistant Attorney General, Civil Division, and Linda S. Werney, Assistant Director, were on the brief.

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide whether we have jurisdiction to review the Board of Immigration Appeals' application of its own precedent in determining whether the removal of two aliens would cause their children to suffer "exceptional and extremely unusual hardship."

I

Elfido Mendez-Castro and Rosa Imelda Mendez ("the petitioners") are natives and citizens of Mexico who entered the

United States without inspection in October 1985 and March 1987, respectively. The petitioners separately were served with Notices to Appear charging them as removable under 8 U.S.C. § 1182(a)(6)(A)(i), as aliens present in the United States without having been admitted or paroled.

The petitioners filed applications for cancellation of removal arguing, among other things, that their removal to Mexico would impose an "exceptional and extremely unusual hardship" under 8 U.S.C. § 1229b(b)(1)(D) on their four children, all of whom are United States citizens. One of their children, a daughter named Mireya, has a speech disorder that prevents her from properly pronouncing certain words. At a hearing on their applications before an immigration judge ("IJ"), the petitioners expressed concern that, while Mireya's condition had improved from special education in the United States, her speech would regress were she to move to Mexico. Another child, Mariana, is an honor student who cannot read or write in Spanish. The petitioners expressed concern at the hearing that Mariana would not be able to continue her academic progress were she to reside in Mexico with her parents. Regarding their two remaining children, the petitioners expressed general concern that removal would strip them of educational opportunities and that it would separate them from family members who reside in the United States.

The IJ rejected the petitioners' arguments. The IJ noted that "the most recent educational records on Mireya indicate that her speaking skills, her overall academic skills, and her social skills, have significantly improved in the United States," and furthermore that she "has the legal potential for a free and thorough education in Mexico." Concerning Mariana, the IJ found that "owing to her intellectual skill, her fluency in the speaking of Spanish, and her family contact in Mexico and owing to what appears to be her future legal rights to Mexican citizenship, and a free education in Mexico, there is no evidence that the relocation of Mariana to Mexico would cause her the kind and scope of challenges which would equate with

'exceptional and extremely unusual hardship.' " Lastly, the IJ found that the removal of the petitioners' other children "would [not] cause them a degree of hardship that would come close to the phrase 'exceptional and extremely unusual,' " because of their good health, youth and ability to speak Spanish.

The IJ therefore denied the petitioners' applications for cancellation of removal. In a per curiam opinion, the Board of Immigration Appeals ("BIA") affirmed the IJ's decision and cited *Matter of Burbano*, 20 I. & N. Dec. 872, 874 (BIA 1994).[1] The petitioners timely filed a petition for review.

## II

The petitioners argue that the IJ failed to apply BIA precedent concerning whether Mireya's special educational needs rose to the level of an "exceptional and extremely unusual hardship." The petitioners also argue that the IJ failed to render a cumulative analysis of the hardship that removal would cause the petitioners' children to suffer. As always, we first must determine whether we have jurisdiction to review such claims. *Miguel-Miguel v. Gonzales*, 500 F.3d 941, 944 (9th Cir. 2007).

## A

**[1]** Under 8 U.S.C. § 1229b(b)(1), "[t]he Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States," if the alien satisfies four criteria, including a showing "that removal

---

[1]"Where . . . the BIA affirms the IJ pursuant to [*Burbano*], and does not express disagreement with any part of the IJ's decision, the BIA effectively adopts the IJ's decision in its entirety." *Moreno-Morante v. Gonzales*, 490 F.3d 1172, 1174 (9th Cir. 2007). Accordingly, we "review the IJ's decision as if it were the BIA's." *Id.*

would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." Prior to the enactment of the REAL ID Act of 2005, Pub. L. No. 109-13, div. B, 119 Stat. 231, we held that 8 U.S.C. § 1252(a)(2)(B)(i) strips us of jurisdiction to review an IJ's discretionary determination that an alien has failed to satisfy such standard. *See Romero-Torres v. Ashcroft*, 327 F.3d 887, 891-92 (9th Cir. 2003).

**[2]** The REAL ID Act amended § 1252 by retaining language foreclosing our ability to review "any judgment regarding the granting of relief under section . . . 1229b," but adding an exception for "constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals." Pub. L. No. 109-13, div. B., § 106(a)(1)(A)(iii), 119 Stat. 231, 310; *see* 8 U.S.C. §§ 1252(a)(2)(B)(i), (a)(2)(D). The statute thereby "restored judicial review of constitutional claims and questions of law presented in petitions for review of final removal orders." *Martinez-Rosas v. Gonzales*, 424 F.3d 926, 930 (9th Cir. 2005) (quoting *Fernandez-Ruiz v. Gonzales*, 410 F.3d 585, 587 (9th Cir. 2005)). However, it "did not alter" our prior holdings that we are barred from reviewing the merits of a hardship determination. *Id*. at 929-30.

**[3]** Moreover, we have made clear that any challenge of an IJ's discretionary determination must present a colorable claim. *See id*. at 930. "To be colorable in this context, the alleged violation need not be substantial, but the claim must have some possible validity." *Id*. (internal quotation marks omitted); *see Torres-Aguilar v. INS*, 246 F.3d 1267, 1271 (9th Cir. 2001) ("[A] petitioner may not create the jurisdiction that Congress chose to remove simply by cloaking an abuse of discretion argument in constitutional garb . . . To determine whether we have jurisdiction over claims labeled as due process violations, we must look beyond the label."); *see also Barco-Sandoval v. Gonzales*, 516 F.3d 35, 40 (2d Cir. 2008)

(applying the colorableness requirement to questions of law raised in a petition for review). A petition for review that fails to present such a colorable claim "is nothing more than an argument that the IJ abused his discretion" in determining that the petitioner "did not meet the requirement of 'exceptional and extremely unusual hardship,' " which is "a matter over which we have no jurisdiction." *Martinez-Rosas*, 424 F.3d at 930. Because the petitioner bears the burden of raising a colorable constitutional claim or question of law, *see id.*, it necessarily follows that we must presume that we lack jurisdiction absent such a showing.

## B

The petitioners concede that we do not have jurisdiction to reweigh the evidence underlying the IJ's conclusion that removal would not cause their children to suffer an "exceptional and extremely unusual hardship." They contend, however, that their petition for review does not directly attack the merits of the IJ's hardship determination, but that it instead presents the question of law that the IJ's decision failed to apply the correct legal standard governing a hardship determination. The petitioners also contend that the IJ's decision was factually inconsistent with prior agency precedent concerning a qualifying relative's special educational needs.

## 1

**[4]** We have held that whether an IJ failed to apply a controlling standard governing a discretionary determination is a question over which we have jurisdiction under § 1252(a)(2)(D). *See Afridi v. Gonzales*, 442 F.3d 1212, 1218 (9th Cir. 2006) (holding that, "[w]hile we cannot reweigh evidence" underlying a discretionary determination, "we can determine whether the BIA applied the correct legal standard in making its determination"), *overruled on other grounds by Estrada-Espinoza v. Mukasey*, No. 05-75850, 2008 WL 4615681, at *9 n.15 (9th Cir., Oct. 20, 2008); *see also Khan*

*v. Gonzales*, 495 F.3d 31, 35 (2d Cir. 2007) ("[W]here, as here, a petitioner argues that the agency applied an erroneous legal standard in making a discretionary determination, the petitioner raises a question of law, which we have jurisdiction to review."). The petitioners' first claim is therefore clearly colorable and we have jurisdiction to address it, so long as it satisfies the general requirement that a claim on appeal not be frivolous. *See Barco-Sandoval*, 516 F.3d at 40 ("While the argument that a discretionary decision was based on a legally erroneous standard raises a question of law . . . we lack jurisdiction to review any legal argument that is so insubstantial and frivolous as to be inadequate to invoke federal-question jurisdiction.") (internal quotation marks and citation omitted).

[5] The petitioners argue that the IJ failed to adhere to the requirement under *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 63-64 (BIA 2001), that an IJ consider the health of a petitioner's qualifying relatives, including any "compelling special needs in school," in rendering a hardship determination under 8 U.S.C. 1229b(b)(1)(D).[2] However, a cursory review of the IJ's decision reveals that such argument fails on two independent grounds: the IJ cited *Monreal* in rendering its decision and, moreover, the IJ explicitly considered Mireya's speech impediment in rendering its opinion. While the petitioners also would have us determine whether the IJ took into account the purportedly "strong case" of hardship that arises where a qualifying relative has special educational needs, such an argument is inherently intertwined with the IJ's assessment of the facts, which we lack jurisdiction to review.[3]

---

[2]Because "exceptional and extremely unusual hardship" is not statutorily defined, we must look to BIA precedent setting forth the required considerations in applying such standard. *See Afridi*, 442 F.3d at 1219.

[3]Contrary to the petitioners' contention at oral argument, *Monreal* nowhere requires that the IJ consider whether their United States citizen children "would be deprived a meaningful education" upon removal. While the petitioners also point to an isolated statement in another BIA decision denying cancellation of removal because the alien "ha[d] not shown that her children would be deprived of all schooling or of an opportunity to obtain any education [upon removal]," *In re Andazola-Rivas*, 23 I. & N. Dec. 319, 323 (BIA 2002), the BIA did not state that such is a required consideration in every case.

**[6]** The record also patently belies the petitioners' contention that the IJ failed to render a cumulative analysis of the hardship that removal would inflict on their children. *See Recinas*, 23 I. & N. Dec. at 472 (noting that *Monreal* "requires the assessment of hardship factors in their totality, often termed a 'cumulative analysis' "). As noted, the IJ expressly cited and applied *Monreal* in rendering its decision, which is all our review requires. In any event, the IJ's decision discussed the children as a group, and the IJ concluded that insufficient hardship would be suffered by "any or all" of the petitioners' children.

**[7]** Because the IJ applied the correct legal standard in this case, and because we may not proceed further to examine its application of the facts of this case to the "exceptional and extremely unusual hardship" standard, we must conclude that the petitioners' claims are "so insubstantial and frivolous" as to preclude our jurisdiction over them. *Barco-Sandoval*, 516 F.3d at 40.

2

**[8]** We also lack jurisdiction to address the petitioners' claim that the IJ's decision in this case is factually inconsistent with prior agency hardship determinations. The "exceptional and extremely unusual hardship" standard "is almost necessarily a subjective question" that depends on the "identity" and the "value judgment of the person or entity examining the issue." *Romero-Torres*, 327 F.3d at 890-91 (internal quotation marks omitted); *see also Martinez-Rosas*, 424 F.3d at 930 (noting that a hardship determination is "subjective [and] discretionary"). Accordingly, a challenge to an IJ's hardship determination on such ground would require us step into the IJ's shoes and reweigh the facts in light of the agency's subjective treatment of purportedly similar cases. This second claim is not even colorable, but merely constitutes an attempt

to "cloak[ ] an abuse of discretion argument" in the garb of a question of law.[4] *Torres-Aguilar*, 246 F.3d at 1271.

This case is therefore distinguishable from *Ramadan v. Gonzales*, 479 F.3d 646 (9th Cir. 2007), in which we held that 8 U.S.C. § 1252(a)(2)(D) confers jurisdiction to review the BIA's application of undisputed facts in determining whether a petitioner satisfies the "changed circumstances" standard under 8 U.S.C. § 1158(a)(2)(D). 479 F.3d at 648, 650. In *Ramadan*, we had jurisdiction to review the application of facts to the "changed circumstances" standard because such standard "does not depend[ ] upon the identity of the person or entity examining the issue, but rather is less value-laden and does not reflect the decision maker's beliefs in and assessment of worth and principle." *Id*. at 656 (internal quotation marks omitted). Because, as noted, we have held that the "exceptional and extremely unusual hardship" standard is subjective, and thus that it *does* implicate the "value judgment of the person or entity examining the issue," *Romero-Torres*, 327 F.3d at 890-91, we must conclude that we lack jurisdiction to review an IJ's application of such standard to the facts of a case, be they disputed or otherwise.[5]

---

[4]Thus, we also cannot review the petitioners' claim that the IJ's decision violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, by providing an unexplained departure from prior agency practice. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005) (noting that an "[u]nexplained [agency] inconsistency is . . . a reason for holding an interpretation to be an arbitrary and capricious change from agency practice under the [APA]"); *Abebe v. Gonzales*, 493 F.3d 1092, 1102 (9th Cir. 2007) (reviewing whether the BIA "consistently interpreted the [relevant] test one way and then reversed course without an adequate explanation"). Even if we had jurisdiction under § 1252(a)(2)(D) to review whether the denial of cancellation of removal in this case violated the APA, we simply cannot determine whether the BIA has inconsistently applied a determination founded on the "identity" and "value judgment" of the entity deciding it.

[5]We note that two of our recent opinions have identified, but expressly declined to resolve, an apparent tension between *Afridi* and *Ramadan*

### III

**[9]** For the foregoing reasons, the petition for review is

**DISMISSED**.

---

regarding our jurisdiction to review discretionary decisions under the REAL ID Act. *See Husyev v. Mukasey*, 528 F.3d 1172, 1179 (9th Cir. 2008); *see also Dhital v. Mukasey*, 532 F.3d 1044, 1049 n.2 (9th Cir. 2008) (per curiam). That is, while *Afridi* held that we have jurisdiction "to review questions of law presented in petitions for review . . . *even those pertaining to otherwise discretionary determinations*," 442 F.3d at 1218 (emphasis added), *Ramadan* concluded that the REAL ID Act "does not restore jurisdiction over discretionary determinations," 479 F.3d at 654. *See Husyev*, 528 F.3d at 1179 (noting that *Ramadan* reached a "contrary conclusion" regarding our jurisdiction to review discretionary determinations). We need not resolve such tension here, since we hold that this claim involves neither a question of law nor a non-subjective determination.

We further note that *Ramadan* is in tension with *Romero-Torres*, where we held that "an inquiry is discretionary where it is a subjective question that depends on the value judgment of the person or entity examining the issue." *Romero-Torres*, 327 F.3d at 891. Thus, while *Ramadan* distinguished between discretionary and subjective standards, *Romero-Torres* held that the two are intertwined. In any event, because our precedent clearly establishes that the "exceptional and extremely unusual hardship" standard is subjective, *see, e.g.*, *Martinez-Rosas*, 424 F.3d at 930, we need not resolve such potential conflict.