NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JAN 20 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CARLOS FABRICIO ALVAREZ LEAL, Petitioner, v. LORETTA E. LYNCH, Attorney General, Respondent. | No. 12-71638 Agency No. A089-502-287 MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted January 20, 2017[**]
Pasadena, California

Before: SCHROEDER, PREGERSON, and FRIEDLAND, Circuit Judges.

Carlos Fabricio Alvarez-Leal, a native and citizen of Mexico, petitions for

review of the Board of Immigration Appeals' order dismissing his appeal from an

Immigration Judge's denial of his application for cancellation of removal. The

petition raises a single claim that the constitutional rights of Alvarez-Leal's citizen

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]    The panel unanimously concludes this case is suitable for decision without oral argument.  See Fed. R. App. P. 34(a)(2).

daughter were violated because she did not receive notice, an opportunity to be heard, and representation by counsel.

We may exercise jurisdiction to review Alvarez-Leal's third-party due process claim under 8 U.S.C. § 1252(a)(2)(D) only to the extent that it alleges a "colorable constitutional violation." *Martinez-Rosas v. Gonzales*, 424 F.3d 926, 930 (9th Cir. 2005); *see also Mendez-Castro v. Mukasey*, 552 F.3d 975, 978 (9th Cir. 2009). Because we find that it does not, we dismiss the petition.

Even if Alvarez-Leal's then-two-year-old daughter had a right to the procedural safeguards in question, Alvarez-Leal fails to make the requisite showing of prejudice. *See Lata v. INS*, 204 F.3d 1241, 1246 (9th Cir. 2000) (explaining that a valid due process claim in the removal context requires a showing of both "error and substantial prejudice"). Alvarez-Leal was given the opportunity to call witnesses to testify but declined to do so, and he effectively represented the interests of his two year-old child by testifying to the hardships she would face if he were removed. Alvarez-Leal fails to explain what new information his daughter, who was able to speak only a few words of either English or Spanish, could have injected into the hearing.

Because Alvarez-Leal has not shown that the outcome of the proceedings

2

would have been any different with the asserted procedural safeguards in place, his third-party due process claim is not colorable and we lack jurisdiction to entertain it. *See Ibarra-Flores v. Gonzales*, 439 F.3d 614, 620-21 (9th Cir. 2006) (explaining that a decision by the BIA will be reversed on due process grounds only if the petitioner shows "that the outcome of the proceeding may have been affected by the alleged violation" (quoting *Platero-Cortez v. INS*, 804 F.2d 1127, 1132 (9th Cir. 1986))).

**PETITION DISMISSED.**

*Alvarez-Leal v. Lynch*, No. 12-71638
Pregerson, J., dissenting:

I dissent.

In 1990, at the age of 10, Carlos Fabricio Alvarez-Leal was brought to the

United States from Mexico by his father.  Carlos's father obtained amnesty from

the United States in the late 1980s and was thereafter able to bring Carlos and the

rest of his family to this country on visitor visas.  Carlos's father became a United

States citizen in 2003.  Carlos's two brothers also became United States citizens,

and his mother and sister are now lawful permanent residents.

Unfortunately, immigration relief evaded Carlos.  He arrived in the United

States two years too late to qualify for Family Unity Benefits.[1]  He reached age 21

three years too early to be eligible for relief under the Child Status Protection Act.[2]

And he missed the eligibility criteria for Deferred Action for Childhood Arrivals

by one year.[3]  Carlos also applied for adjustment of status based on his father's

---

[1] *See* 8 C.F.R. § 236.12 (2016).
[2] *See* Child Status Protection Act, Pub. L. No. 107-208, 116 Stat. 927 (2002)
(codified as amended in scattered sections of 8 U.S.C.),
https://www.gpo.gov/fdsys/pkg/PLAW-107publ208/pdf/PLAW-107publ208.pdf.
[3] *See* Memorandum from Janet Napolitano, Sec'y of Dep't of Homeland Sec.,
Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the
United States as Children (June 15, 2012), https://www.dhs.gov/xlibrary/assets/s1-
exercising-prosecutorial-discretion-individuals-who-came-to-us-as-children.pdf;
*see also* Memorandum from Jeh Charles Johnson, Sec'y of Dep't of Homeland
Sec., Exercising Prosecutorial Discretion with Respect to Individuals Who Came
to the United States as Children and with Respect to Certain Individuals Who Are
the Parents of U.S. Citizens or Permanent Residents (Nov. 20, 2014),

1

United States citizenship status, but his visa priority date is still years away from becoming current.[4]

Despite these setbacks, Carlos has contributed to the betterment of our society for the last 26 years. Carlos grew up in San Diego, where he graduated from Hoover High School. After graduation, Carlos began working as a package handler and forklift operator. He has since worked as a carpenter, a security guard, and in the food service industry. He pays taxes and supports his family.

Carlos met his partner Lilian in high school. They have been together for 16 years. On March 17, 2009, Carlos and Lilian's daughter, Daisy, was born in San Diego. Daisy is a United States citizen by birth. She is now seven years old, about to turn eight.

On January 18, 2010, Carlos made a mistake: he was arrested for driving under the influence of alcohol. No one was hurt. Carlos pled guilty, completed probation, and his record was expunged. This is Carlos's sole encounter with our justice system.

Directly after his arrest, Carlos spent one week in jail. During that time, federal immigration authorities learned that Carlos lacked legal status. On January

---

https://www.dhs.gov/sites/default/files/publications/14_1120_memo_deferred_action.pdf.

[4] *See, e.g.*, *Visa Bulletin for February 2017*, Bureau of Consular Affairs, United States Dep't of State, https://travel.state.gov/content/visas/en/law-and-policy/bulletin/2017/visa-bulletin-for-february-2017.html.

25, 2010, Carlos was served with a Notice to Appear before an immigration judge ("IJ") in San Diego, which charged him as removable for overstaying his visa.[5]

Before an IJ, Carlos conceded removability, but requested cancellation of removal based on "exceptional and extremely unusual hardship" to Daisy, his United States citizen daughter.[6] After the merits hearing, the IJ issued an oral decision denying cancellation of removal relief. The IJ found that Carlos failed to show the requisite degree of hardship because Carlos could move to Tijuana, Mexico, where his geographic proximity to his daughter, Daisy, would minimize the severity of their separation. Carlos appealed to the Board of Immigration Appeals, and then to our court.

We referred Carlos's case to mediation in the hopes that the government would exercise prosecutorial discretion. For decades, the federal government's mechanism for exercising prosecutorial discretion in the context of immigration enforcement has been deferred action, the formal determination not to remove a particular individual.[7] On November 20, 2014, the Department of Homeland

---

[5] *See* 8 U.S.C. § 1227(a)(1)(B) (2016) ("Any alien who is present in the United States in violation of this chapter or any other law of the United States, or whose nonimmigrant visa . . . has been revoked under section 1201(i) of this title, is deportable.").

[6] *See* 8 U.S.C. § 1229b(b)(1)(D) (2016) (outlining eligibility criteria for cancellation of removal relief).

[7] Anil Kalhan, *Deferred Action, Supervised Enforcement Discretion, and the Rule of Law Basis for Executive Action on Immigration*, 63 UCLA L. Rev. Disc. 58, 66–67 (2015).

Security expanded deferred action. Via the Johnson Memorandum, the government extended its policy of exercising prosecutorial discretion to apply to individuals who, among other things, have a United States citizen child and have continuously resided in the United States since before January 1, 2010.[8] Recognizing that Carlos met these qualifications, we hoped that mediation would prove successful. But, after nearly a year, mediation failed and Carlos's case was returned to us.

Despite the equities in this case, the government has chosen to remove Carlos to a country that he has not known for 26 years and that he fears. Carlos testified as to the widespread violence in Mexico. His fears of pervasive kidnappings, murders, and cartel violence have been well documented, both at the time of his hearing in 2011 and today.[9]

---

[8] Memorandum from Jeh Charles Johnson, Sec'y of Dep't of Homeland Sec., Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children and with Respect to Certain Individuals Who Are the Parents of U.S. Citizens or Permanent Residents (Nov. 20, 2014), https://www.dhs.gov/sites/default/files/publications/14_1120_memo_deferred_action.pdf.

[9] *See, e.g.*, Bureau of Democracy, Human Rights and Labor, United States Dep't of State, *2015 Country Reports on Human Rights Practices – Mexico* (Apr. 13, 2016) ("Impunity and corruption in the law enforcement and justice system remained serious problems. Organized criminal groups killed, kidnapped, and intimidated citizens, migrants, journalists, and human rights defenders."), https://www.justice.gov/sites/default/files/pages/attachments/2016/04/15/dos-hrr_2015_mexico.pdf; Bureau of Democracy, Human Rights and Labor, United States Dep't of State, *2011 Country Reports on Human Rights Practices – Mexico* (May 24, 2012) ("Transnational Criminal Organizations remained the most

Fearing for his daughter's personal safety, Carlos is now forced to take a step no father should have to take: he will separate from his daughter. He refuses to take her to a country where violence against women and girls remains prevalent and human rights violations are committed with impunity.[10] Effectively, the government's decision to prosecute Carlos is a decision to tear this family apart. I decline to be a party to this harsh result.

---

significant perpetrator of violent crimes in the country, showing disregard for civilian casualties, engaging in human trafficking, and intimidating journalists and human rights defenders with violence and threats. . . . The following problems also were reported during the year by the country's National Human Rights Commission (CNDH) and other sources: kidnappings; physical abuse; poor, overcrowded prison conditions; arbitrary arrest and detention; corruption and lack of transparency that engendered impunity within the judicial system; and confessions coerced through torture."), https://www.justice.gov/sites/default/files/eoir/legacy/2013/06/10/mexico_1.pdf.

[10] Amnesty Int'l, The State of the World's Human Rights 2015/16 Report 249, 251 (Feb. 23, 2016) ("Impunity persisted for grave human rights violations including torture and other ill-treatment, enforced disappearances and extrajudicial executions. . . . Violence against women and girls remained endemic, including killings, abductions, and sexual violence."), https://www.amnesty.org/en/documents/pol10/2552/2016/en/.