**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| JAVIER MARTINEZ, <br> *Petitioner-Appellant*, <br><br> v. <br><br> LOWELL CLARK, Warden, Northwest Detention Center; NATHALIE ASHER, Tacoma Field Office Director, United States Immigration and Customs Enforcement; ALEJANDRO MAYORKAS, Secretary, Department of Homeland Security; MERRICK B. GARLAND, Attorney General, <br> *Respondents-Appellees.* | No. 21-35023 <br><br> D.C. No. 2:20-cv-00780-TSZ <br><br><br> OPINION |

Appeal from the United States District Court
for the Western District of Washington
Thomas S. Zilly, District Judge, Presiding

Argued and Submitted March 7, 2022
Seattle, Washington

Filed June 15, 2022

Before:  Jacqueline H. Nguyen, Eric D. Miller, and
Patrick J. Bumatay, Circuit Judges.

Opinion by Judge Bumatay

## SUMMARY[*]

### Immigration/Habeas/Detention

Affirming in part and vacating in part the district court's denial of Javier Martinez's habeas petition challenging his immigration detention, and remanding, the panel held that: 1) federal courts lack jurisdiction to review the discretionary determination of whether a particular noncitizen poses a danger to the community such that he is not entitled to bond; and 2) the district court correctly denied Martinez's claims that the Board of Immigration Appeals erred or violated due process in denying bond.

Martinez was detained under 8 U.S.C. § 1226(c), which provides for mandatory detention of noncitizens with certain criminal convictions throughout their removal proceedings. After Martinez filed a habeas petition, the district court ordered that he receive a bond hearing, reasoning that his prolonged mandatory detention violated due process. An IJ denied bond, and the BIA affirmed, concluding that the government sustained its burden to show that Martinez was a danger to the community by clear and convincing evidence. Martinez then brought the instant habeas petition, seeking release. The district court asserted jurisdiction over Martinez's claims, but denied habeas relief.

The panel held that the district court lacked jurisdiction to review the determination that Martinez posed a danger to the community, concluding that dangerousness is a discretionary determination covered by the judicial review

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

bar of 8 U.S.C. § 1226(e). That section bars federal courts from reviewing "discretionary judgment[s]" regarding the detention under § 1226. In concluding that the dangerousness determination is discretionary, the panel observed that the only guidance as to what it means to be a "danger to the community" is an agency-created multi-factorial analysis with no clear, uniform standard for what crosses the line into dangerousness. Thus, the panel explained it was left without standards sufficient to permit meaningful judicial review. Moreover, the panel explained that dangerousness is a fact-intensive inquiry that requires the equities be weighed, and like the other determinations this court has found to be discretionary (such as whether a crime is "violent or dangerous," or whether hardship is "exceptional and extremely unusual"), is a subjective question that depends on the identity and the value judgment of the person or entity examining the issue.

The panel further explained that the district court erred in relying on *Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017), to assert jurisdiction. The panel explained that *Hernandez*'s class action challenge to the "policy" and "process" over bond hearings is a far cry from Martinez's challenge to the individualized finding that he is "dangerous."

Martinez contended that the facts of his case are settled and, as in *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062 (2020), courts can review the application of a legal standard to established facts as a "question of law" not covered by the bar of § 1226(e). The panel explained that the key point in *Guerrero-Lasprilla* is that courts are not precluded from reviewing the application of legal standards to settled facts, but here there is no legal standard that, if met, requires a certain outcome. The panel also rejected Martinez's attempt

to reframe the question as an evaluation of whether the undisputed facts satisfy the constitutionally compelled evidentiary standard for dangerousness, explaining that it would not allow Martinez to circumvent § 1226(e)'s jurisdictional bar by cloaking an abuse of discretion argument in constitutional garb. Thus, the panel vacated the district court's judgment as to dangerousness and remanded with instructions to dismiss.

As to Martinez's remaining claims, the panel concluded that the district court had jurisdiction to review them as constitutional claims or questions of law not covered by §1226(e), but agreed with the district court that they must be denied. First, Martinez contended that the BIA failed to apply the correct burden of proof and review all the evidence in the record in assessing dangerousness. The panel explained that there were no red flags to suggest that the BIA failed to consider all the evidence; rather, the BIA correctly noted the government's burden and reviewed the record, but concluded that, under the totality of the evidence, he was a danger to the community. Second, Martinez argued that the BIA had to consider alternatives to detention, such as conditional parole, before denying bond. The panel disagreed, explaining that the applicable precedent does not suggest that due process mandates that immigration courts consider release conditions or conditional parole before deciding that an alien is a danger to the community.

**COUNSEL**

Robert Pauw (argued), Gibbs Houston Pauw, Seattle, Washington, for Petitioner-Appellant.

Dana M. Camilleri (argued), Trial Attorney; Anthony P. Nicastro, Assistant Director; Brian M. Boynton, Acting Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondents-Appellees.

**OPINION**

BUMATAY, Circuit Judge:

Congress has determined that certain categories of aliens are subject to mandatory detention during their removal proceedings. *See* 8 U.S.C. § 1226(c). The most common reason for a noncitizen to be placed in mandatory detention is a criminal history. *See Nielsen v. Preap*, 139 S. Ct. 954, 960 (2019) (plurality opinion). So aliens with certain criminal convictions *must* remain in the government's custody without bond throughout their removal proceedings.

Despite this statutory provision, district courts throughout this circuit have ordered immigration courts to conduct bond hearings for noncitizens held for prolonged periods under § 1226(c). The district court directives flow not from statutory text, but from due process. According to one such court order, the "prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process." *Martinez v. Clark*, No. 18-CV-01669-RAJ, 2019 WL 5962685, at *1 (W.D. Wash. Nov. 13, 2019) (simplified).

Whether due process requires a bond hearing for aliens detained under § 1226(c) is not before us today. And we take no position on that question.

What is before us today is the scope of federal court review of those bond determinations. In this case, the district court ordered that Javier Martinez—a twice-convicted drug trafficker detained under § 1226(c)—receive a bond hearing to determine whether he was a danger to the community or a flight risk. A hearing was held, and an immigration judge found that clear and convincing evidence showed that he was such a danger. The Board of Immigration Appeals ("BIA") affirmed, and Martinez remained detained.

Martinez then appealed to federal district court to overturn his detention. Martinez raised three claims: (1) clear and convincing evidence did not show he is a danger to the community; (2) the BIA applied the incorrect burden of proof at his hearing; and (3) the BIA failed to consider alternatives to detention, such as conditional parole. The district court asserted jurisdiction over all three claims and denied habeas relief. That decision was not entirely appropriate.

Congress has barred courts from reviewing "discretionary judgment[s]" regarding the detention and release of aliens in removal proceedings. 8 U.S.C. § 1226(e). Federal courts may only review related "constitutional claims or questions of law." *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011). We hold that an immigration court's determination that a noncitizen is a danger to the community is a "discretionary judgment" not subject to review. We thus vacate the district court's judgment regarding Martinez's first claim and remand with instructions to dismiss for lack of jurisdiction.

The district court did, however, have jurisdiction to review Martinez's last two claims since they involve questions of law or constitutional questions. Because they were correctly denied, we affirm.

## I.

Javier Martinez, a native of Costa Rica and citizen of Nicaragua, entered the United States in 1987 as a conditional resident. Three years later, he became a lawful permanent resident of the United States. In 2000, he was convicted of conspiring to distribute cocaine under 21 U.S.C. §§ 841, 846, and sentenced to 20 months in prison. The next year, after his release from prison, the Department of Homeland Security ("DHS") commenced removal proceedings against Martinez. An immigration judge later granted him withholding of removal.

Twelve years after his release from prison, in 2013, Martinez was once again arrested for trafficking cocaine under 21 U.S.C. §§ 841, 846. After his arrest, a federal magistrate judge released Martinez on his own recognizance. About five months later, Martinez pleaded guilty to the drug charge. He was released for the three months before sentencing. At the sentencing hearing, the district court noted that it was "impressed" with Martinez's ability to control himself and to "avoid the pitfalls" while he was "out on bond." The district court observed that it would not have released Martinez (as the magistrate judge did), but that Martinez did well with the opportunity. Martinez remained drug-free and complied with all the conditions of his release. Based on his efforts at rehabilitation, the district court sentenced Martinez to 60 months in prison. The district court also allowed Martinez to self-report to prison, and he did so a month later. While in prison, Martinez earned his GED, took vocational classes, and attended Bible studies.

He also participated in a drug-treatment program and received counseling for his drug addiction.

In early 2018, DHS reopened his removal proceedings based on his 2013 conviction. After his release from prison in April 2018, Martinez was taken directly into DHS custody and held without bond. After about six months, Martinez received a bond hearing, but the presiding immigration judge determined that he did not have jurisdiction to release Martinez because he was subject to mandatory detention under 8 U.S.C. § 1226(c).

In November 2018, Martinez then filed a federal habeas petition seeking immediate release or, in the alternative, an individualized bond hearing before an immigration judge. The district court ordered that Martinez receive a bond hearing. *Martinez*, 2019 WL 5962685, at *1. The district court reasoned that Martinez's prolonged mandatory detention under § 1226(c) violated due process. *Id.* To comply with due process, the district court ordered "the government to show by clear and convincing evidence that [Martinez] presents a flight risk or a danger to the community at the time of the bond hearing." *Id.*

In November 2019, an immigration judge held a bond hearing for Martinez and denied him bond. The immigration judge ruled that the government had met its burden of showing by clear and convincing evidence that Martinez was a danger to the community and a flight risk. In making the dangerousness determination, the immigration judge evaluated Martinez's mitigating evidence, such as his successful release on bond pre-incarceration, the district court's statements during sentencing, his efforts at rehabilitation, his family ties, and his strong community support. Still, the immigration judge found Martinez's two convictions for drug trafficking to be dispositive. The

immigration judge also determined that conditional parole was not appropriate for Martinez.

On appeal, the BIA ruled that Martinez was ineligible for release on bond based on the "totality of the evidence." The BIA agreed with the immigration judge that the government sustained its burden to show that Martinez was a danger to the community by clear and convincing evidence. In doing so, the BIA emphasized that it had "long acknowledged the dangers associated with the sale and distribution of drugs" and found that Martinez's repeated drug-trafficking convictions provided "strong evidence" that he was dangerous. The BIA also acknowledged Martinez's rehabilitation efforts, but it found that his good behavior for "the approximately 7 years he has been detained in either prison or DHS custody does not indicate that he will not revert to his old habits of drug use and trafficking upon his release." The BIA did not reach the immigration judge's alternative conclusion that Martinez posed a flight risk.

Martinez then brought the instant federal habeas petition under 28 U.S.C. § 2241, seeking release from DHS detention. As relevant here, Martinez asserted that the BIA erred by failing to consider releasing him on conditional parole and by concluding that the government met its burden to present clear and convincing evidence of his dangerousness.

As to the threshold issue of jurisdiction, a magistrate judge held that the federal court had jurisdiction over Martinez's claims. First, the magistrate judge ruled that Martinez's conditional parole claim was a question of law and did not challenge any discretionary determination. Next, the magistrate judge considered as a "colorable due process argument" Martinez's claim that the government failed to meet its evidentiary burden in denying bond.

After asserting jurisdiction, the magistrate judge recommended that the district court deny the habeas petition. On the conditional parole claim, the magistrate judge determined that the Ninth Circuit does not require immigration courts to consider conditions of release in assessing whether an alien could be released on bond. On the dangerousness claim, the magistrate judge applied de novo review and held that the government satisfied its burden of showing by clear and convincing evidence that Martinez was a danger to the community. The district court adopted the magistrate judge's report and recommendations.

Martinez now appeals. We have jurisdiction over the appeal under 28 U.S.C. § 1291 and § 2253(a). We review the denial of a habeas petition de novo, *Padilla-Ramirez v. Bible*, 882 F.3d 826, 828 (9th Cir. 2017), any underlying legal questions de novo, and factual questions for clear error, *Singh*, 638 F.3d at 1202–03.

## II.

Before reaching the merits of this petition, we first reconsider the district court's view that it had jurisdiction to review all of Martinez's claims. "If a federal court lacked jurisdiction to decide an issue before it[,] we may exercise appellate jurisdiction to correct the error." *Shoner v. Carrier Corp.*, 30 F.4th 1144, 1150 (9th Cir. 2022) (simplified). We conduct that jurisdictional analysis on a claim-by-claim basis; jurisdiction over one claim does not automatically mean jurisdiction over all claims. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

Martinez raises three questions for review in his habeas petition: (1) whether the BIA erred in determining that clear and convincing evidence showed that Martinez is a danger to the community; (2) whether the BIA applied the correct

burden of proof; and (3) whether the BIA violated due process by failing to consider alternatives to detention. We review each in turn, but first provide context as to the jurisdictional framework for reviewing bond determinations.

## A.

Congress has made it clear that certain immigration determinations are unreviewable by federal courts. Congress, for example, has made a "choice to provide reduced procedural protection" for "adjustment of status" decisions by "sharply circumscrib[ing] judicial review" of those decisions. *Patel v. Garland*, 142 S. Ct. 1614, 1619, 1626 (2022) (referring to the jurisdictional bar under 8 U.S.C. § 1252(a)(2)(B)). We are generally bound by Congress's decision to strip our jurisdiction over a particular matter. *See Patchak v. Zinke*, 138 S. Ct. 897, 908 (2018) (plurality opinion) ("The constitutionality of jurisdiction-stripping statutes . . . is well established.").

In this case, we confront another jurisdictional wall: 8 U.S.C. § 1226(e). With that section, Congress barred federal courts from reviewing "discretionary judgment[s]" regarding the detention of noncitizens under § 1226. Section 1226(a) allows the government to arrest and detain an alien "pending a decision on whether the alien is to be removed from the United States." In general, § 1226(a) gives the government the "discretion either to detain the alien or to release him on bond or parole." *Nielsen*, 139 S. Ct. at 959. If an alien objects to the government's bond determination, the alien may appeal that decision to an immigration judge. *Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) (citing 8 C.F.R. §§ 236.1(d), 1003.19(c)). At that stage, the alien must establish "that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight." *Id.* (quoting *In re Guerra*,

24 I. & N. Dec. 37, 38 (BIA 2006)). If the alien satisfies the burden, the immigration judge may release the alien on bond or subject to other conditions of release. *Id.* at 983 (citing 8 C.F.R. §§ 236.1(d), 1003.19).

Section 1226(c), on the other hand, requires "mandatory detention" for certain categories of "criminal aliens." *Nielsen*, 139 S. Ct. at 960 (citing 8 U.S.C. § 1226(c)(1)(A)–(D)). A noncitizen like Martinez, who was convicted of two drug-trafficking offenses, qualifies for mandatory detention under § 1226(c). *See* 8 U.S.C. §§ 1226(c)(1)(A), 1182(a)(2). That person is then held in custody without a bond hearing. According to the Supreme Court, "Congress adopted this provision against a backdrop of wholesale failure by the INS to deal with increasing rates of criminal activity by aliens." *Demore v. Kim*, 538 U.S. 510, 518 (2003).

Section 1226 ends with a broad jurisdiction-stripping provision. It reads:

> The Attorney General's discretionary judgment regarding the application of [§ 1226] shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

8 U.S.C. § 1226(e). Section 1226(e) means that an alien may not use the federal courts to "challeng[e] a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release." *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018) (plurality opinion) (simplified). So importantly, federal

courts are barred from reviewing "discretionary decisions about the application of § 1226 to particular cases." *Nielsen*, 139 S. Ct. at 962 (simplified); *see also Singh*, 638 F.3d at 1202 (holding that a federal court may not second-guess the "executive's exercise of discretion" when it comes to the detention or release of noncitizens). And much like the jurisdictional bar in *Patel*, this provision "reflects Congress' choice to provide reduced procedural protection" for discretionary judgments regarding the detention of aliens. *See* 142 S. Ct. at 1626.

But while the provision sweeps broadly, it's also true that § 1226(e) does not limit habeas jurisdiction over "constitutional claims or questions of law." *Id.* That's because § 1226(e) does not strip federal courts of their "traditional habeas jurisdiction, bar constitutional challenge[s]," or preclude attacks to the "statutory framework" permitting detention without bail. *Id.* As for "questions of law," we may review the "application of a legal standard to undisputed or established facts." *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1068 (2020). Thus, challenges to the "discretionary process"—rather than to the "discretionary judgment[s]" themselves—are reviewable in federal court. *Singh*, 638 F.3d at 1202.

So federal courts are without jurisdiction to review a "discretionary judgment regarding" the decision to hold an alien in custody. 8 U.S.C. § 1226(e). In this context, "judgment" means "any authoritative decision." *Patel*, 142 S. Ct. at 1621 (citing Webster's Third New International Dictionary 1223 (1993) and 8 Oxford English Dictionary 294 (2d ed. 1989)). The use of "regarding" in the provision has "a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating

to that subject."  *Id.*, at 1622 (quoting *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1760 (2018)).

The touchstone of a "discretionary" determination is that it's "subjective." *Romero-Torres v. Ashcroft*, 327 F.3d 887, 891 (9th Cir. 2003).  We have said it "is almost necessarily a subjective question that depends on the identity and the value judgment of the person or entity examining the issue." *Mendez-Castro v. Mukasey*, 552 F.3d 975, 980 (9th Cir. 2009) (simplified).  The determination is "value-laden" and "reflect[s] the decision maker's beliefs in and assessment of worth and principle." *See Ramadan v. Gonzales*, 479 F.3d 646, 656 (9th Cir. 2007) (per curiam).  A "prototypical" example is one that is "fact-intensive" and requires "equities [to] be weighed." *Torres-Valdivias v. Lynch*, 786 F.3d 1147, 1153 (9th Cir. 2015).  In contrast, "determinations that *require* application of law to factual determinations are nondiscretionary." *Zerezghi v. U.S. Citizenship & Immigr. Servs.*, 955 F.3d 802, 808 (9th Cir. 2020) (emphasis added) (simplified); *see also id.* (holding that the government "*must* approve an I-130 visa petition if the facts stated in the application are true and the beneficiary is an immediate relative").

Under this rubric, we have held that several types of immigration determinations are "discretionary":

- Whether a crime is "violent or dangerous." *Torres-Valdivias*, 786 F.3d at 1152–53.

- Whether a crime is "particularly serious."  *Arbid v. Holder*, 700 F.3d 379, 383 (9th Cir. 2012) (per curiam).

- Whether an "exceptional and extremely unusual hardship" has been met. *Mendez-Castro*, 552 F.3d at 980.

- Whether an "extreme hardship" has been met. *Prapavat v. INS*, 662 F.2d 561, 562 (9th Cir. 1981) (per curiam).

- Whether an alien has "good moral character." *Ramadan*, 479 F.3d at 656.

We have also held that matters of governmental grace, such as adjustment of status and cancellation of removal relief are discretionary judgments not subject to review. *Bazua-Cota v. Gonzales*, 466 F.3d 747, 748–49 (9th Cir. 2006) (per curiam); *Romero-Torres*, 327 F.3d at 890; *accord Patel*, 142 S. Ct. at 1619.

With this background, we turn to Martinez's claims. We apply § 1226(e)'s jurisdictional framework here. Although the district court ordered that Martinez receive a bond hearing to comply with due process, the discretionary judgments made at the hearing "relat[e]" to mandatory detention under § 1226(c). *See Patel*, 142 S. Ct. at 1626. We start our analysis with Martinez's challenge to the dangerousness determination that kept him detained under that subsection.

## B.

We hold that the determination of whether a particular noncitizen poses a danger to the community is a discretionary determination, which a federal court may not review. To begin, what does it mean to be a "danger to the community"? We are aware of no statutory or regulatory definition. Although we've approved of certain factors in

considering the question, *see Singh*, 638 F.3d at 1206 & n.5, neither our court nor any other circuit court appears to have defined dangerousness. In *Singh*, we said that an immigration judge should look to the factors set out in *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). *Id.*[1] That agency opinion explains that immigration judges have "broad discretion" in considering and weighing those factors. *Guerra*, 24 I. & N. Dec. at 40. And while we've advised that an alien's criminal history is the "most pertinent" factor, we have not said what combination of facts is "conclusive[]" to establish dangerousness. *Singh*, 638 F.3d at 1206. So the only guidance then is an agency-created multi-factorial analysis with no clear, uniform standard for what crosses the line into dangerousness. We thus are left without "standards sufficient to permit meaningful judicial review." *Husyev v. Mukasey*, 528 F.3d 1172, 1181 (9th Cir. 2008).

So like "dangerous crime," "particularly serious crime," "exceptional and extremely unusual hardship," "extreme hardship," and "good moral character," we hold that "danger to the community" fits comfortably within the category of discretionary determinations. Dangerousness is a "fact-intensive" inquiry that requires the "equities [to] be

---

[1] The nine factors are: "(1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States." *Guerra*, 24 I. & N. Dec., at 40.

weighed." *Torres-Valdivias*, 786 F.3d at 1153. And like the rest of the lot, it is a "subjective question that depends on the identity and the value judgment of the person or entity examining the issue." *Mendez-Castro*, 552 F.3d at 980 (simplified). What one immigration judge may find indicative of a propensity for danger, another may see as progress toward redemption. This is exactly the type of discretionary judgment that § 1226(e) insulates from judicial review.

Take this case for example. Martinez is a twice-convicted drug trafficker, but has shown some promise by succeeding on pretrial release and making significant progress toward rehabilitation. Reasonable minds can differ on whether clear and convincing evidence establishes that he is a danger to the community. The decision comes down to the decisionmaker's "beliefs in and assessment of worth and principle." *Ramadan*, 479 F.3d at 656. As the dangerousness determination is subjective and value-laden, it is a discretionary judgment that federal courts are precluded from reviewing.

In contrast, the district court asserted jurisdiction over the claim as a constitutional question. In the district court's view, if Martinez was correct that the government failed to meet its evidentiary burden to prove dangerousness, then the BIA's bond determination was "constitutionally flawed." To support jurisdiction, the district court relied on *Hernandez*, 872 F.3d at 988. But that case does not support a finding of jurisdiction here. In *Hernandez*, we asserted jurisdiction over a class action brought by noncitizens challenging the government's "policy" of ignoring their financial circumstances or non-monetary alternative conditions of release in setting bond amounts. *Id.* at 983. We held that the plaintiffs' claims were cognizable on

habeas review because they were not attacking "the *amount* of their initial bonds," but rather claiming that the "discretionary process itself was constitutionally flawed." *Id.* at 988 (simplified). *Hernandez*'s challenge to the "policy" and "process" over bond hearings is a far cry from Martinez's challenge to the individualized finding that he is "dangerous." The district court thus erred in asserting jurisdiction over the dangerousness determination.

Martinez contends that the district court's assertion of jurisdiction was nonetheless proper because the facts of his case are settled and courts can always review the "application of a legal standard to undisputed or established facts," like in *Guerrero-Lasprilla.* He asks us to adopt a de novo standard to review whether clear and convincing evidence proves he is a danger to the community. But the key point in *Guerrero-Lasprilla* is that courts are not precluded from reviewing the application of *legal standards* to settled facts. 140 S. Ct. at 1068. Here, we have no "legal standard" that, if met, requires a certain outcome. *Cf. Zerezghi*, 955 F.3d at 808 (requiring the issuance of a I-130 visa if certain facts are present). We only have malleable guidance that steers the immigration judge's subjective assessment of the facts of a particular case. Federal courts thus lack jurisdiction to review the "application of such [a] standard to the facts of [this] case, be they disputed or otherwise." *Mendez-Castro*, 552 F.3d at 981.

Martinez also tries to reframe the question as an evaluation of whether the undisputed facts satisfy the constitutionally compelled clear-and-convincing *evidentiary* standard for dangerousness. But under any framing, this is an attempt to reweigh the evidence supporting a purely discretionary determination. Indeed, Martinez's argument boils down to the claim that due process forbids finding him

dangerous, even considering his two drug-trafficking convictions, because he received pretrial release, engaged in rehabilitation efforts, and had community support. Thus, he argues, it's impossible to find him dangerous by the constitutionally compelled clear-and-convincing-evidence standard. But due process does not command that evidence be weighed a certain way. Simply put, we will not allow Martinez to circumvent § 1226(e)'s jurisdictional bar by "cloaking an abuse of discretion argument in constitutional garb." *Torres-Aguilar v. INS*, 246 F.3d 1267, 1271 (9th Cir. 2001).

We thus hold that the district court lacked jurisdiction to review the BIA's determination that Martinez posed a danger to the community, even if it ultimately agreed with the BIA's conclusion. And because the district court lacked jurisdiction, we cannot evaluate the merits of Martinez's claim.

## C.

After jettisoning Martinez's dangerousness claim, we are left to determine whether the district court had jurisdiction to review his two remaining claims: that the BIA erred by applying the wrong burden of proof and that due process required the BIA to consider alternatives to detention, such as conditional parole. Federal courts retain jurisdiction to review these claims because they are challenges to the legal standards or statutory framework used in bond determinations and are thus "constitutional claims or questions of law." *See Singh*, 638 F.3d at 1202; *id.* at 1202–03 (asserting jurisdiction over whether the immigration judge applied the correct burden of proof); *Mendez-Castro*, 552 F.3d at 979 (retaining jurisdiction over "whether an IJ failed to apply a controlling standard governing a discretionary determination"); *Jennings*, 138 S.

Ct. at 841 (recognizing jurisdiction over challenges to the "statutory framework").

## III.

Turning now to the merits of Martinez's remaining claims, we agree with the district court that they must be denied.

## A.

Martinez contends that the BIA failed to apply the correct burden of proof and review all the evidence in the record in evaluating whether the government proved his dangerousness with clear and convincing evidence. He also alleges the BIA impermissibly shifted the burden of proof to him. We disagree.

Generally, in the absence of any red flags, we take the BIA at its word. For example, "[w]hen nothing in the record or the BIA's decision indicates a failure to consider all the evidence," we will rely on the BIA's statement that it properly assessed the entire record. *Cole v. Holder*, 659 F.3d 762, 771 (9th Cir. 2011). We do not require the BIA to "discuss each piece of evidence submitted." *Id.* Similarly, we accept that the BIA "applied the correct legal standard" if the BIA "expressly cited and applied [the relevant caselaw] in rendering its decision." *See Mendez-Castro*, 552 F.3d at 980. But when there is an indication that something is amiss, like if the BIA "misstat[es] the record" or "fail[s] to mention highly probative or potentially dispositive evidence," we do not credit its use of a "catchall phrase" to the contrary. *Cole*, 659 F.3d at 771–72.

There are no such red flags here. At the outset of its decision, the BIA properly noted that the government bore

the burden to establish by clear and convincing evidence that Martinez is a danger to the community. It then reviewed the record, including Martinez's drug trafficking convictions, and concluded there was "strong evidence" of his dangerousness. It credited Martinez's significant rehabilitation efforts, such as keeping a clean record while on pretrial release and in prison. But it concluded, under "the totality of the evidence," that the serious nature of Martinez's convictions and his history of reoffending, even after several years of sobriety, rendered him a danger to the community. Contrary to Martinez's claim, the BIA explicitly noted the evidence of his release on his own recognizance and his self-report to prison during his 2013 criminal proceedings. Thus, we conclude that the BIA applied the correct burden of proof in this case.

## B.

Martinez finally argues that the BIA had to consider alternatives to detention, such as conditional parole, before denying him bond. Martinez suggests that the BIA must import consideration of conditions of release from the criminal pretrial release context, such as GPS monitoring, drug testing, and counseling, to the immigration custody context. *See* 18 U.S.C. § 3142(c). In Martinez's view, failing to do so violates due process or constitutes legal error. We reject Martinez's argument.

Due process does not require immigration courts to consider conditional release when determining whether to continue to detain an alien under § 1226(c) as a danger to the community. In *Singh*, we addressed the due process requirements for bond hearings for aliens subject to prolonged detention. 638 F.3d at 1203–10. We held that due process requires immigration courts to make contemporaneous records of bond hearings, *id.* at 1200, and

most significantly, that the government prove dangerousness or risk of flight by clear and convincing evidence, *id.* at 1200, 1205. We then noted that these "greater procedural protections" are enough to safeguard an alien's due process rights and "justify [the] denial of bond." *Id.* at 1207.

Nowhere in *Singh* did we suggest that due process also mandates that immigration courts consider release conditions or conditional parole before deciding that an alien is a danger to the community. *Singh* offers the high-water mark of procedural protections required by due process, and we see no reason to extend those protections any further here.

Relying on *Hernandez*, Martinez argues that conditions of release must be considered to ensure that detention is reasonably related to the government's interest in protecting the public. That case is inapposite. In *Hernandez*, the plaintiff noncitizens complained that neither their financial circumstances nor alternative release conditions were considered before their bond decisions were made, even though they were determined not to be dangerous or flight risks. 872 F.3d at 984–85, 990–91. While the government had a legitimate interest in protecting the public and ensuring the appearance of noncitizens in immigration proceedings, we held that detaining an indigent alien without consideration of financial circumstances and alternative release conditions was "unlikely to result" in a bond determination "reasonably related to the government's legitimate interests." *Id.* at 991. The analysis is different here. Martinez was found to be a danger to the community and so his detention is clearly "reasonably related" to the government's interest in protecting the public. *See id.*

## IV.

For these reasons, we vacate the district court's judgment regarding Martinez's challenge to the dangerousness determination and remand with instructions to dismiss; and we affirm the denial of the petition on all other claims.

**AFFIRMED in part and VACATED and REMANDED in part with instructions to dismiss.**